KENNON, Judge.
A Farmall Tractor owned by L. P. and J. T. Osterland was destroyed by fire on October 16, 1947. Plaintiff, insurer and subrogee of the Osterlands, filed this suit against defendant for the value of the tractor destroyed. In the petition plaintiff set ■forth that the defendant owned and operated a two and one-half inch natural gas pipeline across the Osterland field, and that the cause of the destruction of the tractor was the fact that the pipeline was not buried below plow depth at the point where the accident occurred. A subsequent paragraph alleged that the line was originally constructed below plow depth and was so maintained for some years, but that the defendant failed to keep the pipeline buried below plow depth and was therefore guilty of gross negligence.
After presenting other defenses, which are no longer urged, defendant answered, denying the negligence charged to -it and asserting first that the damage was occasioned solely through the negligence of the driver of the tractor in operating below ordinary plow depth, ánd in the action of the driver after the pipeline was struck in failing to shut off the equipment and thereby avojd the danger of fire.
Trial was begun and at the conclusion of plaintiff’s-testimony, the Court sustained an exception of no cause or right of action urged by the defendant at that time. As a result of plaintiff’s appeal from this judgment, the case was remanded to the District Court for completion of the trial. See-La.App., 43 So.2d 504.
After the trial on the merits had been resumed and completed, the District Court rendered judgment in favor of the plaintiff against the defendant partnership for the vahie.of the tractor. Defendant appealed. Plaintiff answered the appeal, asking that the judgment be - extended to. include not only the defendant partnership but also its individual members.
*50 Plaintiff paid for the tractor covered by its policy of fire insurance, and secured a subrogation from L. P. and J. T. Osterland, who were owners of the tractor and of certain farm lands in Ouachita Parish, traversed by a two and one-half inch natural gas pipeline owned by defendant. On the morning of October 16, 1947, an employee of the Osterlands was driving the insured tractor with an attached dual plow. The plowing was being cpnducted at a depth of five to six inches and it proceeded without incident until shortly before noon, when the tractor was destroyed in the manner described by its driver as follows: “A ter-, rible noise and the dust. And when the dust settled — I couldn’t see nor neither hear and when the dust settled I looked and tried to see what happened, and I throwed it in reverse and tried to back it up and it would-n’t back up and I throwed it in fourth gear getting off of it and it reared up and wheeled around and when it hit the ground it caught afire; I had trotted off from it about as far as from here to that window.”
The driver testified that he had been working for the Osterlands for a year or a part of a year, and that he had struck the pipeline before with a disc in the portion of the field over near a bayou where the line was exposed at the bayou edge and lay at a shallow depth in the nearby area ; that he had never struck the pipeline before in the portion of the field where the accident occurred. He testified that on the date of the accident he was plowing five, six or seven inches deep. This depth was verified by one of his employers, who had personally supervised the setting of the plow so that it would uniformly operate at a depth of approximately six inches. The driver also testified that on previous days he had, without striking the pipeline, “plowed it looked like to me deeper than I was plowing then.”
The pipeline at and near the point at which it was broken by the plow point, was buried at a depth of fourteen inches. There is no proof in the record as to what caused one of the plow points to go deeper and engage the pipeline at the point of the accident. A possible explanation is that at the point of the break, there was a “cuff” around the pipeline. One of the farm owners testified that the bolts and fl-anges of the collar or cuff extended about two inches higher than the pipe itself and that the plow point just happened to strike this collar. However, defendant’s employee testified that the plow point did not strike the coupling, but it was hit near the coupling, causing the pipe to break out in the threads. The District Court gave as a possible explanation of the accident that the middle-buster came in contact with a root or some other obstruction that caused it to go deeper than usual into the ground and thereby strike the line.
As a'basis for holding the defendant responsible, the petition sets forth that the defendant failed to bury and maintain its pipeline “below ordinary plow depth.” The answer denied the paragraph of the petition charging that the pipeline was not buried below ordinary plow depth. At the trial of the case, the testimony presented as to what constituted ordinary plow depth was that of plaintiff’s insured, who testified that he ordinarily and customarily plowed at a depth of five, six or seven inches. The following quotations from the testimony of this witness for plaintiff show the failure of plaintiff to establish this principal act of alleged negligence on the part of defendant:
“Q. Mr. Osterland, I will ask you whether or not, in so far as your knowledge went that the line was beneath plow depth if kept in proper condition? A. Yes, sir.
“Q. Does the wear and tear of the soil and so on have a tendency to wear your soil down some from year to year, Mr. Osterland? A. I don’t believe on that particular tract, because that is a kind of a low part of the place. If it was upon a hill it would be different, but not on that particular place.
“Q. How far below the surface of the ground was this line where you were plowing on that occasion? A. Well, the best I could say, between — well, when they went below the line it was something between *51 four inches — and right here with this accident happened it must have been around five inches. No, it might not have been quite that deep.
“Q. Now, in your farming operations, Mr. Osterland, ordinarily, and what is the ordinary depth at which you plow in ordinary farming operations on such land as you have out there? A. Around five or six inches.”
The record supports the finding of the District Court that the pipeline at the point where the accident occurred was in fact buried to a depth of fourteen inches. There is no testimony in the record to establish that fourteen inches is an insufficient depth to bury a pipeline in a locality where the customary plow depth is five to seven inches. It is incumbent upon the plaintiff in any case to prove the acts of negligence upon which he seeks to hold his adversary liable. In this case, plaintiff has failed to meet that burden.
The District Court, in his reasons for judgment, evidently considered that the defendant was negligent in not knowing or marking the location of its pipeline across the Osterland land. The failure to mark the pipeline was not raised by the pleadings. Evidence concerning the location and marking of the pipeline was admissible under other allegations and therefore did not have the effect of enlarging the pleadings.
The testimony shows that defendant’s pipeline was exposed in the area adjacent to the bayou edge. That the location of the pipeline was known to Mr. Osterland is shown by his testimony that he showed the pipeline location to an employee of defendant whose duty it was to walk the pipeline right-of-way. Since the landowm-ers knew of the line location, no damage resulted to them from the failure to mark its path.
The deed by which the defendant acquired the right-of-way over the land on which the accident occurred contains no requirement that the pipeline shall be buried below plow depth, or be buried at all. However, the original grantee had caused its pipes to be buried, and, since we find that, at the place where the loss of the tractor occurred, the pipeline was in fact buried to a depth below ordinary plow level, it is unnecessary for us to decide whether the grantee of the pipeline instrument, which contains no obligation with reference to the depth at which the pipeline is to be laid, is nevertheless obligated to bury the pipe to such a depth as not to interfere with the normal use of the land over which the pipeline traverses.
Since we have found that there is no liability on the merits, it is unnecessary to consider whether or not, under the pleadings offered by plaintiff, judgment should be rendered against the individual partners as well as against the defendant partnership.
The judgment appealed from is reversed. Judgment is now rendered dismissing plaintiff’s suit. Plaintiff to pay all costs of the lower court and of this appeal.